# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

**SCHRADE JONES and CARTER GILLIAM,**

*Plaintiffs-Appellants,*

**v.**

**UNITED STATES OF AMERICA and TENNESSEE VALLEY AUTHORITY,**

*Defendants-Appellees.*

On Appeal from a Final Judgment of the United States District Court for the Northern District of Alabama

Case No. 5:22-cv-00620-LCB

The Hon. Liles C. Burke, presiding

# PETITION FOR INITIAL HEARING EN BANC

F. Taylor Rouse
Counsel for Appellants
RYAN & ROUSE, LLC
525 Madison Street SE, Suite 210
Huntsville, AL 35801
Telephone:  (256) 801-1000
Facsimile:  (256) 801-0101
Email:  taylor@alabamalaw.com

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**SCHRADE JONES;**
**CARTER GILLIAM,**

    *Plaintiffs-Appellants*,

**v.**

**UNITED STATES OF AMERICA;**
**TENNESSEE VALLEY AUTHORITY,**

    *Defendants-Appellees.*

**Appeal No. 25-10547**

## <u>CERTIFICATE OF INTERESTED PARTIES AND CORPORATE</u>
## <u>DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, Plaintiffs/Appellants Schrade Jones and Carter Gilliam furnish a complete list of the following Interested Persons and Corporate Disclosure Statement:

1. Ayliffe, David D. — Attorney for Tennessee Valley Authority

2. Billingsley, Michael B. — Attorney for United States of America

3. Burke, Hon. Liles C. — Presiding District Court Judge

4. Chase, James S. — Attorney for Tennessee Valley Authority

5. Delemarre, Michelle — Attorney for United States of America

6. Escalona, Prim F. — Attorney for United States of America

7. Gilliam, Carter — Plaintiff/Appellant

8. Holt, Elizabeth — Attorney for United States of America

*Schrade Jones, et al. v. United States, et al.*,
Eleventh Circuit Court of Appeals Case No. 25-10547

9.  Jones, Schrade — Plaintiff/Appellant

10. Long, Don — Attorney for United States of America

11. Rouse, F. Taylor — Attorney for Plaintiffs/Appellants

12. Shaw, Weili J. — Attorney for United States of America

13. Tennessee Valley Authority — Defendant/Appellee

14. United States of America — Defendant/Appellee


No publicly-traded company or corporation has an interest in the outcome of this appeal.


DATED:     March 10, 2025.


/s/ F. Taylor Rouse
F. Taylor Rouse (ASB-8709-R53M)
Attorney for Schrade Jones and Carter Gilliam
RYAN & ROUSE, LLC
525 Madison Street SE, Suite 210
Huntsville, AL 35801
Telephone: (256) 801-1000
Facsimile: (256) 801-0101
Email: taylor@alabamalaw.com

# RULE 40(b)(2) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decisions in *Williams v. United States*, 747 F.2d 700 (11th Cir. 1984) and its progeny are contrary to the following decisions of the Supreme Court of the United States or the precedents of this Circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court:

> *Eastern Transp. Co. v. United States*, 272 U.S. 675 (1927);
>
> *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019); and
>
> *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971).

I also express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:

1) Is the former Fifth Circuit's decision in *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971) controlling since it was never overturned by this Court sitting en banc?

2) Should this Court's decision in *Williams v. United States*, 747 F.2d 700 (11th Cir. 1984) be overturned because it unconstitutionally rewrote the Suits in Admiralty Act, 46 U.S.C. § 30903(a)?

3) If the Suits in Admiralty Act does not provide a remedy for a plaintiff in a suit against the Tennessee Valley Authority, can a plaintiff still maintain his action pursuant to the TVA Act's sue-and-be-sued waiver, 16 U.S.C. § 831c(b)?

i

<u>/s/ F. Taylor Rouse</u>
F. Taylor Rouse
Attorney of Plaintiffs-Appellants

# TABLE OF CONTENTS

Certificate of interested persons and corporate disclosure statement ....................C1

Rule 40(b)(2) Statement ..........................................................................................i

Table of Contents ...................................................................................................iii

Table of Authorities ................................................................................................ v

    Cases ................................................................................................................ v

    Statutes ...........................................................................................................vi

    Exhibits ...........................................................................................................vi

Statement of the Issues Asserted to Merit En Banc Consideration ......................... 1

Statement of the Case............................................................................................. 1

  1. Statement of the course of proceedings and disposition of the case .............. 1

  2. Statement of facts necessary to argument of the issues................................. 2

Argument............................................................................................................... 3

  1. Legal Background......................................................................................... 3

      1.1. The SAA waives the Government's immunity
           for maritime tort claims .................................................................... 3

      1.2. *Eastern Transport*: The SAA's Waiver Is Broad ............................... 4

      1.3. *De Bardeleben*: Rejecting FTCA Exceptions ................................... 5

      1.4. *Williams* and Its Progeny: Rewriting the SAA ................................. 7

  2. En Banc review is necessary to determine whether *Williams*
     controls at all.............................................................................................. 8

3.  *Williams* must be overruled because it conflicts with the Constitution and Supreme Court decisions .......................................................................9

    3.1.  *Thacker* is conclusive .......................................................................12

4.  What controls the TVA's suability—the SAA or the TVA Act? ...................13

Conclusion ...............................................................................................................15

Signature .................................................................................................................15

Certificate of Compliance ......................................................................................16

Certificate of Service ..............................................................................................17

Addendum .................................................................................................... Add. 1

# TABLE OF AUTHORITIES

## Cases

*Alabama v. North Carolina*,
    560 U.S. 330 (2010)...................................................................................11

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981)...................................................... 6

*Bowles v. Russell*,
    551 U.S. 205 (2007)...................................................................................10

*Cranford v. United States*,
    466 F.3d 955 (11th Cir. 2006)................................................... 2, 8

*De Bardeleben Marine Corp. v. United States*,
    451 F.2d 140 (5th Cir. 1971)................................................. 1, 5, 9

*Den ex dem. Murray v. Hoboken Land & Imp. Co.*,
    59 U.S. 272 (1855).............................................................. 10-11

*Drake Towing Co. v. Meisner Marine Constr. Co.*,
    765 F.2d 1060 (11th Cir. 1985)...................................................8

*Eastern Transp. Co. v. United States*,
    272 U.S. 675 (1927).......................................................... 1, 4

*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994)...................................................................................14

*Indian Towing Co. v. United States*,
    350 U.S. 61 (1955).....................................................................................11

*Mid-South Holding Co., Inc. v. United States*,
    225 F.3d 1201 (11th Cir. 2000)...................................................8

*Morrison v. Amway Corp.*,
    323 F.3d 920 (11th Cir. 2003)........................................................9

*Nguyen v. United States*,
556 F.3d 1244 (11th Cir. 2009).....................................11

*Patchak v. Zinke*,
138 S.Ct. 897 (2018)...................................................10

*Paulk v. Tennessee Valley Authority*,
Case No. 5:22-cv-15 (N.D. Ala. Jan. 6, 2025)..................14, Add. 1

*Puerto Rico v. Franklin California Tax-Free Trust*,
579 U.S. 115 (2016).....................................................11

*Rayonier Inc. v. United States*,
352 U.S. 315 (1957).....................................................11

*Schillinger v. United States*,
155 U.S. 163 (1894).....................................................10

*Thacker v. Tennessee Valley Authority*,
587 U.S. 218 (2019)..............................................1, 4, 12

*United States v. Kubrick*,
444 U.S. 111 (1979).....................................................11

*United States v. Kaley*,
579 F.3d 1246 (11th Cir. 2009)......................................8

*Williams By and Through Sharpley v. United States*,
581 F. Supp. 847 (S.D. Ga. 1983)....................................7

*Williams v. United States*,
747 F.2d 700 (11th Cir. 1984).....................................1, 8

## Statutes

16 U.S.C. § 831c(b) ...................................................1, 12

16 U.S.C. § 831aa ........................................................14

46 U.S.C. § 30903(a) ............................................................ 3

46 U.S.C. § 30904 ......................................................... 13-14

46 U.S.C. § 30910 ............................................................... 3

28 U.S.C. § 2680(a) ......................................................... 2, 4

28 U.S.C. § 2680(d) .......................................................... 3-4

28 U.S.C. § 2680(h) ............................................................. 6

28 U.S.C. § 2680(l) .........................................................4, 12

**Addendum**

*Paulk v. Tennessee Valley Authority*,
     Case No. 5:22-cv-15 (N.D. Ala. Jan. 6, 2025)...................................... Add. 1

## STATEMENT OF THE ISSUES ASSERTED TO MERIT EN BANC CONSIDERATION

1. Is this Court's decision in *Williams v. United States*, 747 F.2d 700 (11th Cir. 1984) "good law" when *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971) was never overturned by the en banc Court?

2. If so, should *Williams* be overturned considering the plain language of 46 U.S.C. § 30903(a); the Supreme Court's decisions in *Eastern Transp. Co. v. United States*, 272 U.S. 675 (1927) and *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019); and numerous other cases holding that the judiciary cannot rewrite a federal statute?

3. If the Suits in Admiralty Act does not provide the Plaintiffs with a remedy against the Tennessee Valley Authority, can they maintain their action under the TVA Act's sue-and-be-sued waiver, 16 U.S.C. § 831c(b)?

## STATEMENT OF THE CASE

**1. Statement of the course of proceedings and disposition of the case.**

Plaintiffs-Appellants Schrade Jones and Carter Gilliam sued the United States and Tennessee Valley Authority (TVA) and alleged a breach of the general maritime law's duty to exercise reasonable care, which includes the duty to warn of foreseeable dangers. *See* Doc. 36 (Amended Complaint) at 9-11 (¶¶ 89-93). The Plaintiffs alleged that the United States' immunity was waived by the Suits in

Admiralty Act (SAA), 46 U.S.C. § 30903(a); and that the TVA's immunity was waived by the SAA and/or the TVA Act, 16 U.S.C. § 831c(b). *See id*. at 2 (¶¶ 69-70).

Both defendants moved to dismiss, arguing that the Federal Tort Claims Act's discretionary-function exception, 28 U.S.C. § 2680(a), applies to SAA claims and protects their "decisions" about how or even whether to remove or warn of maritime hazards. *See* Doc. 44-1 at 1; Doc. 46 at 2.

On January 22, 2025, the U.S. District Court for the Northern District of Alabama dismissed the complaint, stating that "Eleventh Circuit precedent clearly holds that the SAA's waiver of sovereign immunity is subject to the discretionary-function exception found in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a)." Doc. 51 at 7 (citing *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006)). The Appellants filed their notice of appeal on January 20, 2025. *See* Doc. 52.

## 2. Statement of facts necessary to argument of the issues.

At some point prior to 2007, a "duck blind"—a small shelter built for concealing duck hunters—was built in the middle of Guntersville Lake in Jackson County, Alabama. *See* Doc. 36 at 16 (¶ 108). The duck blind was affixed to a portion of the lakebed that was owned by the United States, entrusted to the TVA, and maintained, overseen, managed, or controlled by the TVA, Coast Guard, and Army Corps of Engineers. *Id*. at 18 (¶ 116). The duck blind was a hazardous obstruction to navigation, and it was foreseeable that it could cause a wreck and injuries to boaters.

*Id*. at 20 (¶ 120). However, the duck blind was not marked with a light, reflective materials, or buoys to warn boaters of its presence. *Id*. at 16 (¶ 109).

On the night of June 5, 2020, Schrade Jones and Carter Gilliam were bowfishing on Guntersville Lake. *Id*. at 17 (¶¶ 109-110). While traveling across the middle of the lake, their boat crashed into the unmarked and unlit duck blind, causing them serious injuries. *Id*. at 17-18 (¶¶ 112-115).

## ARGUMENT

### 1. Legal Background

#### 1.1. The SAA waives the Government's immunity for maritime tort claims.

Congress waived the Government's immunity for maritime tort claims through the SAA, which provides:

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

46 U.S.C. § 30903(a). The SAA's broad waiver has no exceptions for the Government's discretionary decisions; liability is instead only limited by "the exemptions from and limitations of liability provided by law to an owner, charterer, operator, or agent of a vessel." 46 U.S.C. § 30910.

Congress also excluded admiralty claims against the United States, and all claims against the TVA, from the FTCA. *See* 28 U.S.C. § 2680(d) and (l) (stating

that the FTCA's provisions "shall not apply to … [a]ny claim for which a remedy is provided by [the SAA] … relating to claims or suits in admiralty against the United States," or "[a]ny claim arising from the activities of the Tennessee Valley Authority."). Therefore, the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), does not apply to SAA claims. *See Thacker*, *supra*, 587 U.S. 218, 223 ("Congress made clear that the FTCA does 'not apply to any claim arising from the activities of the TVA.' § 2680(l). That means the FTCA's discretionary function provision has no relevance to this case.").

### 1.2. *Eastern Transport*: The SAA's Waiver Is Broad.

The Supreme Court underscored the breadth of the SAA's waiver in *Eastern Transp. Co. v. United States*, 272 U.S. 675 (1927). In that case, the plaintiff's barge collided with the *Snug Harbor*, a sunken steamship owned and previously employed by the United States as a merchant vessel. The *Snug Harbor* was "in a frequented channel within the harbors and inland waters of the United States," but "was not marked with a buoy or beacon by day or a lighted lantern by night, and was not removed by the United States…" *Id*. at 682. The United States moved to dismiss the complaint, arguing that the plaintiff's claims "related to a failure on the part of the officers and agents of the United States to perform a purely governmental function, or to the alleged negligence of such officers and agents in the performance of such a function, and [the SAA] created no liability on the part of the United States for which

it was suable." *Id*. at 682-683. The district court agreed and dismissed the case for lack of jurisdiction.

The Supreme Court reversed and said, "[T]he leaving of a wreck in a navigable channel in a place dangerous to passing steamers without notice of the danger and without immediate removal is unlawful" and a "maritime tort which, if merchant vessels of the United States are to respond in tort, may be recovered for in its admiralty courts against the United States *without anomaly*." *Id*. at 688 (emphasis added).[1] The Court further said that, absent showing a "limitation of liability accorded by law to the owners, charterers, operators or agents of vessels" under 46 U.S.C. § 30910, the United States "must assume the personal liability for negligence in such cases *exactly as a private owner would*." *Id*. at 690-91.

### 1.3. *De Bardeleben*: Rejecting FTCA Exceptions

In *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971), a barge's anchor "fouled some submerged object" in Tampa Bay. The plaintiff's tugboat attempted to free the anchor and ruptured a "4 ½ inch natural gas pipeline that had been laid in 1962 pursuant to a permit from the Corps of Engineers. A fire and explosion followed, causing damage to [the tugboat], [two] barges and personal injuries to the tug's mate." *Id*. at 141. The pipeline was not charted on a

---

[1] Emphasis added unless otherwise noted.

Corps of Engineers nautical map, and the plaintiff sued the United States under the SAA for negligent misrepresentation.

The United States moved to dismiss, arguing that 28 U.S.C. § 2680(h), which reserves immunity for misrepresentation claims brought under the FTCA, also limited the SAA's immunity waiver. The former Fifth Circuit rejected that argument, stating:

> [T]he Government insists that … Congress meant to import *all of the exceptions of FTCA*, and especially that against misrepresentation, § 2680(h), [into the SAA]….
>
> We reject these contentions. The words of the statute, its legislative history, the liberal approach in interpreting waivers of immunity, and the senseless absurdities which would result belie the narrow reading that the Government would give to the [SAA]….
>
> [The purpose of the 1960 amendments to the SAA] was to assimilate the Government to the private person in relation to *any or all* transactions giving rise to liability in the Admiralty…. Reimportation of FTCA provisions or exceptions produces obviously unintended and irrational distinctions….
>
> No better way to end this discussion can be found than these words from *Rayonier, Inc. v. United States*, 352 U.S. 315, 320 (1957): "There is no justification for this Court to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it."

*Id.* at 145-146 (internal citations omitted). That decision became binding authority in the Eleventh Circuit with this Court's decision in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

### 1.4. *Williams* and Its Progeny: Rewriting the SAA

In *Williams By and Through Sharpley v. United States*, 581 F. Supp. 847 (S.D. Ga. 1983), one person was killed and another injured when their boat struck an unmarked mooring dolphin that was placed in the Wilmington River by the Army Corps of Engineers. The plaintiffs sued the United States under the SAA, alleging that the dolphin was an obstruction to navigation and the Government was required to remove or mark it. *Id*. at 849. The district court began its jurisdictional analysis by summarizing the still-binding *De Bardeleben*, stating:

> Because the amending language of the SAA provided a *clear meaning on its face*, the [*De Bardeleben*] court found it unnecessary to read into the [SAA] any exceptions to its ostensible "waiver of immunity" beyond those provided by Congress. That is, the court specifically refused to incorporate into the [SAA] those exceptions to Government liability set out in the Federal Tort Claims Act. *Those exceptions include an exemption for discretionary action by the Government*.

> The Fifth Circuit concluded that the plain meaning of the SAA amendments was to "assimilate the Government to the private person in relation to any or all transactions giving rise to liability in Admiralty." In short, *Congress intended the new SAA to be a waiver of all governmental immunity to suits in admiralty*.

*Williams*, 581 F.Supp. at 850-851 (internal citation omitted). The *Williams* Court thus recognized that the SAA renders the Government suable for maritime torts exactly like a private person.

Yet, that court then rejected *De Bardeleben* and held the exact opposite. Specifically, it declared that "sound principles of judicial restraint in the face of

governmental administrative activity dictate that cases involving discretionary functions *be removed* from the jurisdiction of the courts." *Id*. at 852. Those "principles," the court said, provided a "more than ample basis for *incorporating* the discretionary function exemption of the FTCA into the Suits in Admiralty Act." *Id*. The *Williams* court thus "incorporated" the FTCA's discretionary-function exception into the SAA to "remove" the jurisdiction that the SAA plainly conferred.

A three-judge panel of this Court then affirmed "on the basis of the Order of the district court." *Williams v. United States*, 747 F.2d 700 (11th Cir. 1984). And this Court has continued to apply the rewritten SAA ever since. *See Drake Towing Co. v. Meisner Marine Constr. Co*., 765 F.2d 1060, 1063-1064 (11th Cir. 1985) (citing *Williams* and stating that "the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), applies to suits under the SAA."); *Mid-South Holding Co., Inc. v. United States*, 225 F.3d 1201, 1207 (11th Cir. 2000) (citing *Williams* and stating that "the SAA's waiver of immunity is subject to the discretionary function exception."); *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) (citing *Mid-South Holding* and stating that the SAA is "subject to the discretionary function exception of the [FTCA].").

## 2. En Banc review is necessary to determine whether *Williams* controls at all.

The holding of a case includes both "the result of the case and those portions of the opinion necessary to that result." *United States v. Kaley*, 579 F.3d 1246, 1253

n.10 (11th Cir. 2009) (internal quotation omitted). The Supreme Court in *Eastern Transp.* and the former Fifth Circuit in *De Bardeleben* used broad language to describe the SAA's waiver—"without anomaly," "exactly as a private owner," and "any or all transactions giving rise to liability in the Admiralty." *De Bardeleben* also specifically rejected the Government's argument that "Congress meant to import *all* of the exceptions of FTCA" into the SAA and made clear that Congress alone had the authority to rewrite the SAA to include FTCA exceptions. *De Bardeleben*, 451 F.2d at 145-146.

Supreme Court decisions are obviously binding on the lower courts, and this Circuit follows the "absolute rule" where a prior panel decision can only be overturned by the full court sitting en banc. *See Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) ("a decision of a prior panel cannot be overturned by a later panel."). The Supreme Court has never retreated from *Eastern Transp.*'s "without anomaly" language, and this Court has never overruled *De Bardeleben* while sitting en banc; *Williams*, *Drake Towing*, *Mid-South Holding*, and *Cranford* were all panel decisions.

Therefore, en banc review is necessary to determine whether *Williams* and its progeny control at all.

**3.** ***Williams*** **must be overruled because it conflicts with the Constitution and Supreme Court decisions.**

If *Williams* controls, en banc review is necessary to overturn its clear error. Indeed, it is impossible to square *Williams*'s rewriting of the SAA with the Constitution, *Eastern Transp.*, and the mountain of Supreme Court decisions that prohibit the judiciary's rewriting of statutes.

To begin, the Constitution gives Congress the power to "constitute Tribunals inferior to the Supreme Court." Const. Art. I § 8. This means Congress has the power to determine the cases that the lower courts can and cannot hear. *See,* e.g., *Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."). The Supreme Court has described that power as "plenary." *Patchak v. Zinke*, 138 S.Ct. 897, 906 (2018).

That power gives Congress the "*absolute discretion* to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination." *Schillinger v. United States*, 155 U.S. 163, 166 (1894). The Supreme Court has further said, "Congress may provide by law" that the Government "shall, in a particular class of cases, and under such restrictions *as [Congress] may think proper* to impose, come into a court of law or equity and abide by its determination. The United States may thus place the government upon the same ground which is occupied by private persons … and they may do so to such

extent, and with such restrictions, as may be thought fit." *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855).

And when Congress enacts a clear and unambiguous immunity-waiving statute, there "is no justification for [a court] to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it." *Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957); *see also Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955) ("When dealing with a statute subjecting the Government to liability," a court cannot act "as a self-constituted guardian of the Treasury [and] import immunity back into a statute designed to limit it."); *United States v. Kubrick*, 444 U.S. 111, 118 (1979) (stating that courts cannot "assume the authority to narrow the waiver that Congress intended.").

More broadly, the judiciary "cannot add provisions to a federal statute." *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010); *see also Puerto Rico v. Franklin California Tax-Free Trust*, 579 U.S. 115, 130 (2016) ("our constitutional structure does not permit this Court to rewrite the statute that Congress has enacted."); *Nguyen v. United States*, 556 F.3d 1244, 1256 (11th Cir. 2009) ("We are not authorized to rewrite, revise, modify, or amend statutory language in the guise of interpreting it."). Courts thus have no power to rewrite statutes, including immunity waivers.

The *Williams* court therefore had no power to "incorporat[e] the discretionary function exemption of the FTCA into the [SAA]." *Williams*, 581 F.Supp. 847, 852. Nor did it have power to "remove cases involving discretionary functions from the jurisdiction of the courts." *Id*. (cleaned up). En banc review is necessary to overturn *Williams*'s clear error.

### 3.1. *Thacker* is conclusive.

The Supreme Court's decision in *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019) is directly on point. There, the TVA argued that the FTCA's discretionary function exception limited the TVA Act's sue-and-be-sued immunity waiver, 16 U.S.C. § 831c(b). A unanimous Supreme Court disagreed.

The Court began with the plain language of § 831c(b), which "provides simply that the TVA 'may sue and be sued.'" *Thacker*, 587 U.S. at 223. "By the TVA Act's terms, that waiver is subject to 'exceptions' as 'specifically provided in' the statute itself. § 831c. But the TVA Act contains no exceptions relevant to tort claims, let alone one turning on whether the challenged conduct is discretionary." *Id*. Further, "Congress made clear that the FTCA does 'not apply to any claim arising from the activities of the TVA.' § 2680(l). That means the FTCA's discretionary function provision has no relevance to this case." *Id*. at 1441. The Court then said:

> Congress made a considered decision not to apply the FTCA to the TVA.… The Government effectively asks us to negate that legislative choice. Or otherwise put, it asks us to let the FTCA in through the back

door, when Congress has locked the front one…. But that would mean doing what Congress had not…. And so too here, if we were to bestow the FTCA's discretionary function exception on the TVA … the Government's proposal would make the TVA's tort liability largely coextensive with that of all the agencies the FTCA governs. Far from acting to achieve such parity, Congress did everything possible to avoid it.

In any event, the Government is wrong to think that waiving the TVA's immunity from suits based on discretionary functions would offend the separation of powers… That body [Congress] … has full power to waive that immunity and subject the entity to the judicial process to whatever extent it wishes.

*Id*. at 1440-1442 (internal citations omitted).

Just like the lower courts in *Thacker*, the *Williams* court rewrote the SAA to "let the FTCA in through the back door, when Congress locked the front one." *Williams* cannot stand in the face of clear Supreme Court precedent that prohibits exactly what occurred here, and this Court, sitting en banc, should overturn it.

## 4. What controls the TVA's suability—the SAA or the TVA Act?

If the Plaintiffs' claims are not cognizable under the SAA due to the FTCA's discretionary function exception, then the en banc Court should decide whether the Plaintiffs' claims can proceed against the TVA under the sue-and-be-sued waiver of 16 U.S.C. § 831c(b), which is not subject to any such exception.

First, the SAA says: "*If* a remedy is provided by [the SAA], it shall be exclusive of any other action arising out of the same subject matter against the … federally-owned corporation whose act or omission gave rise to the claim." 46

U.S.C. § 30904. Therefore, if the SAA does *not* provide a remedy—if a claim cannot be brought under its ambit—then it is not "exclusive" of any other action and jurisdiction can instead be founded upon another immunity waiver, such as the TVA Act's sue-and-be-sued clause. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) (because *Meyer's* Fifth Amendment claim was not "cognizable" under the FTCA, he could look to the FSLIC's sue-and-be-sued clause as the applicable immunity waiver).

Second, the TVA Act contains a repeal clause: "All acts or parts of acts in conflict with this chapter are repealed, so far as they affect operations contemplated by this chapter." 16 U.S.C. § 831aa. This repeal clause shows that Congress intended the TVA-specific sue-and-be-sued waiver to trump any other statute that might shield TVA from liability, including any discretionary immunity applicable to SAA claims.

Third, there is already a conflict on this issue in the lower courts of this Circuit. The district court here said that the Plaintiffs "can proceed only [under] the SAA's waiver of sovereign immunity." Doc. 51 at 7. But earlier this year, another judge in the same district said, "[I]f there is an irreconcilable conflict between the scope of the immunity waivers Congress provided in the SAA and TVA Act, then the TVA Act's specific permission to sue TVA for the same remedies faced by a private business trumps the SAA's alleged preclusion of otherwise-available … claims." Add. 12 (Memorandum Opinion in *Paulk v. Tennessee Valley Authority*, Case No.

5:22-cv-15 (N.D. Ala. Jan. 6, 2025)).

## **<u>CONCLUSION</u>**

This petition for initial hearing en banc should be granted.


DATED:     March 14, 2025.


/s/ F. Taylor Rouse
F. Taylor Rouse (ASB-8709-R53M)
Attorney for Schrade Jones and Carter Gilliam
RYAN & ROUSE, LLC
525 Madison Street SE, Suite 210
Huntsville, AL 35801
Telephone: (256) 801-1000
Facsimile: (256) 801-0101
Email: taylor@alabamalaw.com

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 40(d)(3) because it contains 3,496 words, excluding the parts of the petition exempted by Rule 32(f) and Circuit Rule 32(e)(1).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font, size 14-pt.

DATED:  March 14, 2025.

/s/ F. Taylor Rouse
F. Taylor Rouse
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I certify that on this the 14th day of March, 2025, I caused the foregoing to be filed with the Clerk of the Court, via the CM/ECF System, which will send notice of such filing to all registered users. I further certify that the required paper copies have been dispatched to the Clerk of the Court, via United States Parcel Service, for delivery within three business days.

/s/ F. Taylor Rouse
F. Taylor Rouse
Counsel for Plaintiffs-Appellants

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**GERALD PAULK, et al.,**
     Plaintiffs,

**v.**

**TENNESSEE VALLEY AUTH.,**
     Defendant.

**Case No. 5:22-cv-15-CLM**

---

**JOSEPH MILES,**
     Plaintiff,

**v.**

**TENNESSEE VALLEY AUTH.,**
     Defendant.

**Case No. 5:22-cv-105-CLM**

---

**TOMMY JONES, et al.,**
     Plaintiffs,

**v.**

**TENNESSEE VALLEY AUTH.,**
     Defendant.

**Case No. 5:22-cv-114-CLM**

## MEMORANDUM OPINION

Defendant Tennessee Valley Authority ("TVA") asks the court to dismiss Plaintiffs' two state-law counts and dismiss or strike Plaintiffs' prayer for punitive damages. (Doc. 194). As explained within, the court rules:

1. Plaintiffs pleaded facts that invoke the court's admiralty jurisdiction and the special rules for general maritime claims;
2. Plaintiffs can invoke the TVA Act's 'sue-or-be-sued' clause for waiver of TVA's sovereign immunity if TVA's alleged wrongful acts are commercial in nature; and,
3. Eleventh Circuit precedent allows wrongful death plaintiffs to seek punitive damages by using Alabama law to supplement

Add. 1

> the remedies provided by general maritime law. But to be entitled to punitive damages, wrongful death plaintiffs must prove "intentional or wanton and reckless conduct on the part of [TVA] amounting to a conscious disregard of the rights of others," not just simple negligence.

*In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 121 F.3d 1421, 1427-28 (11th Cir. 1997).

The court thus **GRANTS** TVA's Motion to Dismiss Counts 1 and 2 for the surviving plaintiffs, **GRANTS** TVA's Motion to Dismiss Count 1 for the wrongful death plaintiffs, **DENIES** TVA's Motion to Dismiss Count 2 for the wrongful death plaintiffs, and **DENIES** TVA's Motion to Dismiss or Strike the wrongful death plaintiffs' prayer for punitive damages.

## I.

## BACKGROUND

### A.  *Thacker* **and Congress' waiver of TVA's sovereign immunity**

This is an admiralty case that involves the death and injury of more than 20 people. As mentioned in the introduction, Eleventh Circuit precedent says that the representatives of those who died may use Alabama law to seek punitive damages on top of the remedies provided by general maritime law if they can prove that the defendant acted either intentionally or recklessly and wantonly when the defendant caused the victim's death. *In re Amtrak, supra.*

But TVA is different than most defendants; it is a federally-owned corporation entitled to sovereign immunity from *all* money awards unless Congress waives the immunity. The parties point to two Congressional Acts for the waivers that could apply here: the Suits in Admiralty Act of 1920 ("SAA") and the TVA Act of 1933. ("TVA Act"). The parties say the choice matters because the TVA Act treats TVA like a private corporation that is subject to punitive damages under *In re Amtrak*, while the SAA treats TVA like the federal government and provides covered entities with immunity from punitive damages. *See Kasprik v. United States*, 87 F.3d 462 (11th Cir. 1996).

2

Add. 2

1. <u>SAA</u>: Assume that a Government agent or property causes injury on navigable waters, thus invoking the court's admiralty jurisdiction. The SAA waives sovereign immunity for the United States and all federally-owned corporations if the same acts by a private individual or property would invoke the court's admiralty jurisdiction. 46 U.S.C. § 30903. The SAA allows the Plaintiff to file "a civil action in admiralty in personam" against the United States or a federally-owned corporation. *Id.* TVA argues that this is the ***only*** action available to Plaintiffs in admiralty cases against TVA.

2. <u>TVA Act</u>: When Congress created the TVA, it said that "the Corporation . . . [m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b). Plaintiffs argue that this broad 'sue-and-be-sued' clause allows them to sue TVA like a private corporation, rather than a government entity.

3. *<u>Thacker</u>*: As stated, the court agrees with Plaintiffs that the broad 'sue-and-be-sued' clause controls. Much of the court's reasoning stems from the Supreme Court's decision in *Thacker v. TVA*, 587 U.S. 218 (2019). Gary Thacker was driving his boat on the Tennessee River when he struck a power line that TVA workers were raising from the river. Thacker was injured, and he cited the TVA Act's sue-and-be-sued clause to invoke this federal court's jurisdiction to hear his state-law claims, free from sovereign immunity. *See Thacker v. TVA*, Case No. 5:15-cv-1232 (ALND July 23, 2015) (doc. 1) (complaint). But this court and the Eleventh Circuit still held that TVA was immune from Thacker's suit by grafting a "discretionary function" exception like the one found in the Federal Tort Claims Act ("FTCA") onto the TVA Act's waiver of sovereign immunity, then finding that the workers' challenged actions were "a matter of choice." *Thacker*, 587 U.S. at 222-23.

The Supreme Court unanimously reversed. The Court noted that the TVA's sue-and-be-sued clause "serves to waive sovereign immunity otherwise belonging to an agency of the Federal Government," unless there is an exception "'specifically provided in the statute itself." 587 U.S. at 223 (quoting 16 U.S.C. § 831c). Congress did not include the "discretionary function" exception in the TVA Act, so courts could not graft it on. *Id.*

Sounds easy. "But that is not quite the end of the story because in *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed.

Add. 3

724 (1940), the Court recognized that a sue-and-be-sued clause might contain 'implied exceptions.'" *Thacker,* 531 U.S. at 224. The Court then laid out the two *Burr* exceptions:

> The Court in that case permitted a suit to proceed against a government entity (providing mortgage insurance) whose organic statute had a sue-and-be-sued clause much like the TVA Act's. And the Court made clear that in green-lighting the suit, it was doing what courts normally should. Sue-and-be-sued clauses, the Court explained, 'should be liberally construed.' Those words 'in their usual and ordinary sense,' the Court noted, 'embrace all civil process incident to the commencement or continuance of legal proceedings.' *Burr*, 309 U.S., at 245–246. And Congress generally 'intend[s] the full consequences of what it sa[ys]'—even if 'inconvenient, costly, and inefficient.' *Id.*, at 249. But not quite always, the Court continued. And when not—when Congress meant to use the words 'sue and be sued' in a more 'narrow sense'—a court should recognize 'an implied restriction.' *Id.*, at 245. In particular, *Burr* stated, ==a court should take that route if one of the following circumstances is 'clearly shown': either the 'type[ ] of suit [at issue is] not consistent with the statutory or constitutional scheme' or the restriction is 'necessary to avoid grave interference with the performance of a governmental function.'==

*Id.* (cleaned up and highlight added). The Supreme Court remanded the case for this court to determine whether TVA's negligent conduct (*i.e.,* raising the power line) was "governmental or commercial in nature." *Id.* at 229. If this court deemed the conduct "commercial—the kind of thing any power company might do—the TVA [could not] invoke sovereign immunity. In that event, the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party." *Id.* If this court instead found that TVA was acting in a "governmental" capacity, this court would *still* have to find that Congress waived TVA's immunity unless the court also found that protecting TVA from Thacker's lawsuit was "necessary to avoid grave interference" with TVA's performance of that governmental function. *Id.*

Add. 4

While *Thacker* is not binding because Gary Thacker did not invoke Rule 9(h), its rationale drives the court's opinion. The TVA Act does not contain a sovereign immunity exception for admiralty cases or punitive damages. So this court must find that Congress waived TVA's immunity from the supplemental state law punitive damages allowed by Eleventh Circuit precedent, *see In re Amtrak, supra*, unless one of the *Burr* exceptions applies:

> (1) TVA was acting in its governmental capacity, and subjecting it to state law punitive damages would gravely interfere with TVA's performance of that governmental function, or
> (2) Subjecting TVA to state law punitive damages is inconsistent with a statutory or constitutional scheme.

*Thacker*, 587 U.S. at 224-28. The court thus frames its recitation of the facts, then its legal discussion, around these issues. Because TVA filed its motion under Rule 12, the court recites the facts as Plaintiffs pleaded them and views those facts in a light most favorable to Plaintiffs.

## B. The TVA

Congress created the TVA in 1933, giving it "much of the essential freedom and elasticity of a private business corporation."[1] 6AC, ¶ 11 (quoting Pub. L. No. 73-17, 48 Stat. 58 (1933). Over the next 90 years, TVA used its corporate freedom to become the largest public power company in the United States, supplying electricity to more than 8.6 million customers across seven states. TVA is self-sufficient, bringing in more than $7 billion annually as of 2005.

TVA also has custody and control of nearly 300,000 acres of federally owned reservoir property and 470,000 acres of inundated property. 6AC, Ex. 5 at 1. TVA manages its land under various plans and regulations "to protect the integrated operation of the TVA reservoir and power systems, to provide for appropriate public use and enjoyment of TVA public land and to provide for continuing economic growth in the Valley." *Id.* at 2.

---

[1] There are three groups of Plaintiffs: Paulk, Miles, and Jones. All three have filed virtually identical amended complaints. *See* Doc. 186 (Miles), 187 (Paulk), 190 (Jones). Following the parties' lead, the court directs all cites and quotes to the Paulk Plaintiffs' Sixth Amended Complaint (doc. 187)("6AC").

## C. The 1963 Indenture

TVA owns much of the land around the Tennessee River near Guntersville Reservoir. As explained more thoroughly in a previous opinion (doc. 53), TVA deeded some of its property to Jackson County, Alabama in 1963 (6AC, Ex. 1), about 18 acres of which was designated for developed recreation (6AC, Ex. 2). The County built the Jackson County Park and Marina on the deeded property, although part of the Marina is located on property that TVA still owns.

TVA retained certain responsibilities related to the property. Relevant here, Section 26a of the TVA Act requires TVA to approve construction or other work along the Tennessee River that might affect river navigation or flood control. *See* 16 U.S.C. § 831y-1. So in the 1963 deed, TVA required the County to obtain TVA's approval of any structures or improvements on the deeded property. TVA reserved the right to enter the property to perform inspections of any structures. TVA also specified that it would be liable for personal injuries, property damage, or loss of life or property caused by TVA's sole negligence.

## D. Building and Maintaining Dock B

Jackson County built Dock B (a fixed and covered dock) at the Marina in 1999. Plaintiffs allege that TVA has owned, managed, or controlled Dock B ever since. 6AC, ¶ 36.

When the County built Dock B, it had to get TVA's approval under TVA's implementing regulations, which apply to boat docks (among other things). 18 C.F.R. § 1304.301(a). The TVA regulations require that all electrical panels and wiring comply with all relevant codes and statutes and be maintained to prevent public hazards. 18 C.F.R. § 1304.301. The regulations also allow TVA to determine whether the County was properly maintaining the dock and its electrical system and cancel the County's permit if TVA determined it was not. 18 C.F.R. § 1304.406.

TVA permitted Dock B upon its construction in 1999. A tornado hit the Marina in April 2009, requiring the County to rebuild Dock B. Later that month, because of electrical problems at other locations, TVA told the County

Add. 6

that it had to have a certified electrician inspect the electrical systems located on TVA property and certify that the systems meet the National Electric Code. 6AC, Ex. 7. TVA reminded the County of this obligation in August 2009. 6AC, Ex.8.

Plaintiffs allege that in the years that followed, TVA knew that the Marina docks "continued to be dangerous." 6AC, ¶ 56. TVA knew, for example, that an engineer determined that Dock A's electrical system did not meet the NEC code and that the County had twice rejected bids to fix it. TVA knew these things, in part, because TVA reviewed the bids. 6AC, Ex. 12. TVA also knew that boat owners were complaining about the Dock's electrical system.

Plaintiffs allege that TVA also inspected the docks during these years. Based on these inspections, TVA knew about several issues that could result in a lethal fire on Dock B, including:

- Dock B's electrical system created a fire hazard;
- Dock B housed non-operational boats and grills with propane tanks;
- The Marina did not have an emergency safety plan in case of fire;
- Dock B lacked smoke or fire detectors;
- Dock B's roof lacked fire and smoke vents and burn-out panels;
- Dock B lacked a sprinkler system;
- Dock B did not have an escape boat, safety skiff, or floatation device;
- Dock B did not have a system to alert emergency personnel; and,
- The shore power box was locked, so residents could not shut off the electricity in case of emergency.

In short, Plaintiffs allege that TVA knew that conditions were ripe for an electrical fire that neither boat residents nor County officials were prepared to respond to—making any such fire potentially deadly.

### E. The Dock B fire

Just after midnight on January 27, 2020, the *Dixie Delight* houseboat caught fire. The *Dixie Delight* was berthed in Dock B, slip 36—the closest slip to shore. The fire engulfed the *Dixie Delight*, then spread to the dock and neighboring vessels. Because the fire started in the closest slip to the shore,

Add. 7

the fire blocked residents of all other Dock B boats from reaching the shore. Several died, either by fire or drowning. Many others were injured. More than 30 boats burned and sank.

## F. Plaintiffs' claims

Plaintiffs plead five claims against TVA, two under state law (Counts 1-2) and three under general maritime law (Counts 3-5). In all three maritime claims, Plaintiffs state that "this cause of action is brought pursuant to General Maritime Law" and "this count pleads an admiralty or maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure." 6AC, ¶¶ 94-95 (Count 3), 103-04 (Count 4), 114-15 (Count 5).

As for jurisdiction, Plaintiffs plead that the court has subject matter jurisdiction under 28 U.S.C. § 1333(1) because this is "a civil case of admiralty or maritime jurisdiction." 6AC, ¶ 12. Should the court find admiralty jurisdiction lacking, Plaintiffs alternatively plead jurisdiction under 28 U.S.C. §§ 1331 and 1337(a), claiming that the court has original jurisdiction over their state-law claims because TVA is a federally-owned corporation and thus their claims arise under a law of the United States.

Plaintiffs mention punitive damages only once, in their prayer for relief "[o]n behalf of the wrongful death beneficiaries." 6AC, ¶ 128. Specifically, Plaintiffs ask the court to award: "Pecuniary damages under General Maritime Law in amounts to be determined at trial, including . . . Alabama state law wrongful death supplemental remedies under Ala. Code § 6-5-410 and/or Ala. Code § 6-5-390 for punitive damages allowed under *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996)." *Id.*

## G. TVA's motion

As mentioned, shortly after the Supreme Court decided *Yamaha Motor Corp.*, the Eleventh Circuit held that the representative of a deceased victim may seek punitive damages under Ala. Code § 6-5-410, as a supplement to the pecuniary award offered by the general maritime law to the personal representatives of non-seafarers. *In re Amtrak*, 121 F.3d at 1427-28; *see also Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001) (clarifying that the remedies available in wrongful death cases are available

Add. 8

in negligence-based wrongful death cases, as well as unseaworthiness cases). TVA does not challenge *In re Amtrak* in its motion, meaning that TVA accepts that private corporations that act wantonly can be sued for punitive damages in a wrongful death admiralty case. Rather, TVA asks the court to make three rulings that would require the court to treat TVA differently than private corporations—even if TVA were acting like a private corporation:

1. The court is exercising its admiralty jurisdiction;
2. The SAA provides the exclusive waiver of sovereign immunity in admiralty cases; and thus,
3. The court must dismiss Plaintiffs' claim for supplemental state-law punitive damages because the SAA does not waive sovereign immunity from punitive damages.

(Doc. 194). The court starts, as it must, with jurisdiction.

## II.

## JURISDICTION

The court sits in admiralty under 28 U.S.C § 1333(1) because Plaintiffs (a) pleaded facts that meet both elements of the *Grubart* test and (b) expressly designated three counts as pleading general maritime claims.

1. *Grubart test*: Plaintiffs must satisfy two elements to invoke the court's admiralty jurisdiction: locality and connection to maritime activity. *See Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). In *Sisson v. Ruby*, 497 U.S. 358 (1990), the Supreme Court held that both elements were met when a non-commercial boat caught fire while docked at a marina, damaging the marina and other nearby vessels.

The same is true here. Plaintiffs meet the locality element because they allege the fire started on a vessel that was in navigable waters, docked at a marina. Plaintiffs show a connection to maritime activity because, as the Supreme Court put it:

the storage and maintenance of a vessel at a marina on navigable waters is substantially related to 'traditional maritime activity' given the broad perspective demanded by the second aspect of the

Add. 9

> test. Docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity. At such a marina, vessels are stored for an extended period, docked to obtain fuel or supplies, and moved into and out of navigation. Indeed, most maritime voyages begin and end with the docking of the craft at a marina.

*Sisson*, 497 U.S. at 367.

2. *Rule 9(h) election*: Rule of Civil Procedure 9(h) says that if admiralty is the *only* basis for federal jurisdiction, then Plaintiffs' claims are necessarily general maritime claims. The same rule says that if a claim could fall within the court's admiralty jurisdiction and another source of subject matter jurisdiction (*e.g.*, diversity or federal question), then Plaintiffs can choose whether to designate their claims as maritime claims.

Plaintiffs say they had a choice between admiralty and federal question jurisdiction; TVA says the SAA required Plaintiffs to invoke admiralty jurisdiction. The court needn't decide who is right because Plaintiffs expressly designated Counts 3-5 as general maritime claims under Rule 9(h) and pleaded 28 U.S.C. § 1333(1) as the main basis of this court's subject matter jurisdiction. So the court is sitting in admiralty because of Counts 3-5, and the court has supplemental jurisdiction over Plaintiffs' state-law claims (Counts 1-2) thanks to 28 U.S.C. § 1367(a). The question now is whether TVA has sovereign immunity against supplemental state law remedies.

## III.

## WAIVER OF SOVEREIGN IMMUNITY

The Constitution does not expressly grant the federal government with immunity from suits. Rather, the federal government's immunity stems from the common law, *see United States v. Clark*, 33 U.S. (8 Pet.) 436, 444 (1834). which extends sovereign immunity to corporations owned by the federal government. *See Fed. Land Bank v. Priddy*, 295 U.S. 229, 231 (1935).

As arbiter of the common law, the Supreme Court has held that Congress (acting as the sovereign) can waive federal sovereign immunity "to whatever extent it wishes," *Thacker*, 587 U.S. at 226, even if the result is

Add. 10

"inconvenient, costly, and inefficient." *Id.* at 224. As explained below, the court finds that, in the TVA Act, Congress waived TVA's immunity from the legal remedies that private businesses face if Plaintiffs can prove that TVA was acting like a commercial business. Because Plaintiffs allege facts that would show that TVA was acting like a commercial business, Plaintiffs can seek the same supplemental state law remedies the Eleventh Circuit permits against private businesses. *See In re Amtrak, supra.*

The court starts by explaining why Plaintiffs could properly claim the waiver Congress provided in the TVA Act's 'sue-and-be-sued' clause over the waiver Congress provided in the SAA for admiralty claims against the United States and federally-owned corporations.

## A.    The TVA Act's 'sue-and-be-sued' clause controls any conflict.

Congress is aware that the SAA and TVA Act provide distinct waivers of sovereign immunity, as Congress excepted claims arising from both acts from the FTCA's waiver of sovereign immunity for tort damages caused by federal employees:

> The provisions of this chapter and section 1346(b) of this title shall not apply to . . .
>
> (d) Any claim for which a remedy is provided by chapter 309 of 311 of title 46 relating to claims or suits in admiralty against the United States; [and,]
>
> (l) Any claim arising from the activities of the Tennessee Valley Authority.

28 U.S.C. § 2680. If possible, the court must read these waiver statutes in harmony, assuming that Congress knew about existing waivers each time it passed a new one. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 39, p. 252 ("laws dealing with the same subject—being *in para materia* (translated as "in a like manner")—should if possible be interpreted harmoniously").

But sometimes conflicts arise. And if the conflict cannot be reconciled, the "more recent or specific statutes should prevail over older or more general ones." *Savage Serv. Corp. v. United States*, 25 F.4th 925, 933 (11th Cir. 2022);

11

Add. 11

*see also* Scalia & Garner, *Reading Law* § 28, p. 183 ("If there is a conflict between a general provision and a specific provision, the specific provision prevails."). This canon applies to the SAA. For example, the Eleventh Circuit applied the 'general/specific' canon to find that Plaintiffs cannot invoke the SAA to file an otherwise viable admiralty claim against the United States for oil removal damages because the Oil Pollution Act of 1990 ("OPA") sets forth a more comprehensive, on-point remedial scheme for spill-related damages. *See Savage Serv. Corp.*, 25 F.4th at 938-43.

The same canon dictates that the TVA-specific 'sue-and-be-sued' clause controls if it conflicts with the SAA's general waiver for all federally-owned corporations. Three factors bolster application of the canon here. First, the latter-enacted TVA Act contains a repeal clause: "[a]ll acts or parts of acts in conflict with this chapter are repealed, so far as they affect operations contemplated by this chapter." 16 U.S.C. § 831aa. The repeal clause shows that Congress intended the TVA-specific sue-and-be-sued waiver trump any existing statute that might shield TVA. *See Savage Serv. Corp.*, 25 F.4th at 941 (noting that OPA's "notwithstanding any other provision or rule of law" clause was evidence that Congress intended OPA "to take precedence over any preexisting or subsequently-enacted legislation on the same subject," including the SAA). Second, Congress knew how to except admiralty claims filed under the SAA from the scope of TVA's 'sue-and-be-sued' waiver—as Congress later did in the FTCA—but chose not to. Third, the Supreme Court rebuked this court the last time it grafted an immunity exception from another statute on to the TVA Act's sue-and-be-sued clause. *See Thacker, supra*.

Because the court finds that the TVA Act's sue-and-be-sued clause provides the more specific immunity waiver, the court finds that if there is an irreconcilable conflict between the scope of the immunity waivers Congress provided in the SAA and TVA Act, then the TVA Act's specific permission to sue TVA for the same remedies faced by a private business trumps the SAA's alleged preclusion of otherwise-available punitive damages claims.[2]

---

[2] The court assumes without deciding two of TVA's premises that Plaintiffs do not directly challenge: (1) TVA is a "federally-owned corporation" subject to the SAA, 46 U.S.C. § 30902, and (2) binding Eleventh Circuit precedent holds that the SAA does not waive a government entity's sovereign immunity for punitive damages. *See Kasprik v. United States*, 87 F.3d 462 (11th Cir. 1996).

12

Add. 12

**B.  If the wrongful death Plaintiffs can prove their alleged facts, then the TVA Act waives TVA's sovereign immunity from the supplemental state law punitive damages they seek.**

Having decided that the TVA Act's 'sue-and-be-sued' clause provides the relevant waiver, the court next determines whether the TVA Act allows Plaintiffs to seek supplemental state-law punitive damages by using the same two-step approach the Supreme Court used in *Thacker*: (1) does the TVA Act contain an express exception for admiralty cases or punitive damages, and if not, (2) do either of the *Burr* implied exceptions apply?

**1. The TVA Act does not expressly except admiralty cases or punitive damages from its waiver of sovereign immunity.**

The first step is straight forward. The TVA Act says that "[e]xcept as otherwise specifically provided in this chapter, the Corporation [m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b). "The TVA Act contains no exceptions relevant to tort claims," *Thacker*, 587 U.S. at 223, or tort remedies. Nor did Congress add a provision that excepts a "claim for which a remedy is provided by chapter 309 of 311 of title 46 relating to claims or suits in admiralty against the United States," as it later did when writing the FTCA. 28 U.S.C. § 2680. So the court must assume that Congress knew about the SAA and chose not to apply it to maritime claims against TVA when TVA acts commercially and is then sued in its corporate name.

Because the TVA Act does not expressly prohibit Plaintiffs from seeking supplemental state law remedies when suing TVA in its corporate name, the court must allow their supplemental punitive damage claims to go forward unless one of the *Burr* implied exceptions applies:

> when Congress meant to use the words "sue and be sued" in a more 'narrow sense'—a court should recognize 'an implied restriction.' *Id.*, at 245, 60 S.Ct. 488. In particular, *Burr* stated, a court should take that route if one of the following circumstances is 'clearly shown': either the 'type[ ] of suit [at issue is] not consistent with the statutory or constitutional scheme' or the restriction is 'necessary to avoid grave interference with the performance of a governmental function.' *Ibid*.

13

Add. 13

*Thacker*, 587 U.S. at 224. The court takes them in reverse order.

## 2. TVA has not clearly shown that the court must dismiss Plaintiffs' punitive claims to avoid a grave interference with TVA's performance of a governmental function.

TVA must "clearly show[]" that permitting Plaintiffs to seek supplemental state law remedies could impose a "grave interference with the performance of a governmental function." *Id.* In *Thacker*, the Supreme Court noted that "a suit challenging a commercial act will not 'gravely'—or indeed, at all—interfere with the 'governmental functions' *Burr* cared about protecting." *Thacker*, 587 U.S. at 227. Accepting Plaintiffs' pleaded facts as true, the court finds that Plaintiffs' lawsuit challenges a commercial act, so *Burr's* second implied exception cannot apply. *Id.*

When the Supreme Court remanded *Thacker*, it told this court to determine whether TVA's "conduct [was] commercial—the kind of thing any power company might do." *Id.* at 229. If this court found that TVA "act[ed] like any other company producing and supplying electric power" then "the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party." *Id.* at 228-29.

Plaintiffs allege that TVA's wanton conduct stems from TVA's management of a dock on the Tennessee River shoreline. TVA does not challenge that managing a dock is commercial behavior. Rather, TVA accepts that Plaintiffs' alleged facts suggest TVA was performing the commercial role of a "wharfinger" (*i.e.*, one who owns or operates a wharf, dock, or pier) (doc. 195, p. 10-11), when arguing that this court has admiralty jurisdiction because the dock fire that stemmed from TVA's alleged acts "has a potentially disruptive impact on maritime commerce." *Sisson*, 497 U.S. at 362-63.

Further, TVA's management of the Tennessee River shoreline is "the kind of thing any power company might do." *Thacker*, 587 U.S. at 229. For example, Alabama Power (a subsidiary of the publicly-traded Southern Company) similarly manages shorelines along Alabama rivers, including docks and piers. *See* Alabama Power Shorelines, www.apcshorelines.com (last visited January 2, 2025). Because Plaintiffs allege facts that would show that TVA was acting like a private power company or dock owner, Plaintiffs "may

Add. 14

proceed as they would against a private company." *Thacker*, 587 U.S. at 227. Unless, of course, TVA can clearly show that subjecting it to supplemental state law punitive damages is "not consistent with the statutory or constitutional scheme." *Id.* at 224 (quoting *Burr*, 309 U.S. at 245).

### 3. TVA has not clearly shown that Plaintiffs' punitive claims are inconsistent with a statutory or constitutional scheme.

A. *Constitutional scheme*: In *Thacker*, the Supreme Court rejected the argument that Congress' withholding of the discretionary function exception from TVA violated separation of powers. *Thacker*, 587 U.S. at 226. TVA offers no new argument for a constitutional violation here, so the court finds that TVA has not clearly shown that applying state law to supplement Plaintiffs' general maritime remedies would violate the Constitution.

B. *Statutory scheme*: Nor does TVA argue that subjecting it to supplemental state law remedies is inconsistent with the TVA Act's statutory scheme, with good reason. As the Supreme Court explained in *Thacker*, Congress wrote the TVA Act's 'sue-and-be-sued' clause to treat TVA like a commercial business when TVA acts like a commercial business. *Thacker,* 587 U.S. at 226-27. Allowing the wrongful death Plaintiffs to proceed with a supplemental claim under Alabama's wrongful death statute tracks the TVA Act's scheme by placing TVA in the same shoes as a private business that committed the same wanton act.

TVA instead points to the SAA's statutory scheme, arguing that allowing TVA to proceed outside the SAA would conflict with Congress' intent that *all* admiralty actions against federally-owned corporations be governed by the SAA. The court rejects this argument for two reasons.

First, Congress can make exceptions. Even if Congress intended the SAA to cover all federally-owned corporations when it passed the SAA in 1920, Congress decided to treat TVA differently when it passed the TVA Act in 1933. Not only *can* Congress carve out exceptions to sweeping rules, it often does: "[t]he most common example of irreconcilable conflict—and the easiest to deal with—involves a general prohibition that is contradicted by a specific permission[.]" *See* Scalia and Garner, *Reading Law* § 28, p. 183. As the Court noted in *Thacker*, Congress is apt to expand the liability of federal

Add. 15

entities that Congress "launched into the commercial world" and "authorized to engage in business transactions with the public." *Thacker*, 587 U.S. at 227 (quoting *Burr*, 309 U.S. at 245). Again, that's the point of the 'sued-and-be-sued clause': federal entities that are allowed to conduct business with the public "should have the same amenability to judicial process as a private enterprise would under like circumstances." *Id.*

Second, allowing the wrongful death Plaintiffs to seek supplemental state law remedies does not frustrate the SAA's scheme. Before the SAA, if a merchant vessel was involved in an accident, it could be seized and its operator could be sued in state or federal court. *See Johnson v. U.S. Shipping Bd. Emergency Fleet Corp.*, 280 U.S. 320, 325-26 (1930) (explaining the SAA's history); *Brady v. Roosevelt*, 317 U.S. 575, 579-81 (1943) (same). These lawsuits often proceeded against the government vessel *in rem*. Congress passed the SAA to (a) protect the Government's vessels from being seized—and thus being taken out of public service—and (b) give injured parties the ability to seek maritime damages *in personam* in case there was nothing to recover *in rem*—*e.g.*, the vessel was worthless or destroyed. And the point of requiring Plaintiffs to file suit under the SAA exclusively was to ensure that the United States was subject to a uniform set of rules because "[d]irectly or indirectly, the money required to pay a judgment against any of the defendant in these cases would come out of the United States. It is the real party affected in all of these actions." *Johnson*, 280 U.S. at 326-37 (citing current 46 U.S.C. § 30913).

TVA has not clearly shown that allowing the wrongful death Plaintiffs to seek supplemental state law punitive damages is inconsistent with the SAA's scheme. Plaintiffs are proceeding in admiralty *in personam*, which is the benefit Congress gave Plaintiffs. No government property has been seized or is at risk of being forfeited, which is the benefit Congress gave the United States. And TVA—not the United States—is the "real party affected" by this case, *id.*, so the need for uniform rules when suing the Government is not present.

—

To sum up, *Thacker* teaches that "suits based on a public corporation's commercial activity may proceed as they would against a private company;

16

Add. 16

only suits challenging the entity's governmental activity may run into an implied limit on its sue-and-be-sued clause." *Thacker*, 587 U.S. at 227. If proved true, Plaintiffs' pleaded facts would show that TVA's acts were commercial in nature. *Thacker* thus requires the court to allow Plaintiffs to "proceed as they would against a private company," *id*., because TVA has not clearly shown an express or implied exception to its 'sue-and-be-sued' clause.

### 4. Neither the SAA's plain language nor the Fifth Circuit's 1937 *Sevin* decision dictate that the SAA is exclusive, and following the SAA could cause reversible errors.

TVA argues that the SAA provides the exclusive immunity waiver in admiralty cases, so the TVA Act has no role to play. But the SAA's waiver provision is permissive (may be brought), not mandatory (shall be brought):

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

46 U.S.C. § 30903(a) (highlight added). Read plainly, Section 30903 *allows* Plaintiffs to bring a claim against covered governmental entities by waiving their immunity. But nothing in the SAA's text *requires* a Plaintiff to file suit, and nothing in the text says Plaintiffs can only file suit under the SAA if they choose to sue. The SAA's only exclusivity provision is § 30904, which prevents Plaintiffs from suing the Government entity *and* "the officer, employee, or agent whose act or omission gave rise to the claim." But TVA rightly acknowledges that § 30904 plays no part here. (Doc. 232, p.9).

To be fair, TVA doesn't rely on the SAA's text to support exclusivity. Rather, TVA argues that the Supreme Court's decisions in *Johnson* and *Brady*, plus the Fifth Circuit's decision in *Sevin v. Inland Waterways Corp*., 88 F.2d 988 (5th Cir. 1937), require this court to hold that the SAA is exclusive any time a federally-owned corporation is sued in a case that could be filed in admiralty. But none of these cases deal with the TVA and its enabling act, so none are directly on point.

Of the three cases, only the Fifth Circuit's 1937 decision in *Sevin* deals with a sue-and-be-sued clause. In 1924, Congress created the (now-defunct) Inland Waterways Corporation ("IWC") and tasked the Secretary of War with governing and directing its operation of ships. *See* Inland Waterways Corporation Act of 1924, 43 Stat. 360, June 3, 1924 ("IWC Act"). The IWC Act included the same waiver language at issue here: "The corporation [m]ay sue or be sued in its corporate name." IWC Act § 5(b).

An IWC seaman contracted tuberculosis because of poor conditions on an IWC vessel. *Sevin*, 88 F.2d at 988-89. He sued IWC under the Jones Act, which allows seamen to bring maintenance and cure claims at law, before a jury. The IWC countered that, because the United States owned 100% of its capital stock, the SAA trumped the Jones Act, meaning that the seaman could not seek a remedy at law before a jury. The Fifth Circuit sided with the IWC, finding that the SAA was an exception to the Jones Act's general rule—*i.e.*, seamen can generally bring maintenance and cure claims at law, except against the United States and federally-owned corporations. *Id.* at 989.

The Fifth Circuit then decided that the IWC's sue-and-be-sued clause changed nothing:

> By section 5(b), 49 U.S.C.A. § 155(b), the corporation may sue and be sued in its corporate name. The act does not say how it may be sued. It would be suable as other corporations are sued, notwithstanding its public ownership, if there were no law to the contrary. But there was in force, and still is, the Suits in Admiralty Act of March 9, 1920, which deals with vessels 'owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation,' and with the method of suits arising thereabout. The act does not confine itself to vessels of corporations in which the United States then owned the entire stock, but uses the future tense 'shall own,' and the Inland Waterways Corporation falls clearly within the words. The act controls such suits against this corporation as are within its terms.

18

Add. 18

*Id.* (citations omitted). The Circuit's reasoning supports TVA's argument that the SAA applies here despite TVA's 'sue-and-be-sued' clause.

But *Sevin's* laconic treatment of the IWC's sue-and-be-sued clause in 1937 predates the Supreme Court's reading of sue-and-be-sued clauses in *Burr* (1940) and its progeny, each of which requires that Congress' use of sue-and-be-sued waivers be "liberally construed," despite the general rule that courts construe sovereign immunity waivers narrowly in favor of the sovereign. *See Thacker,* 587 U.S. at 224; *FDIC v. Meyer*, 510 U.S. 471, 480 (1994); *Loeffler v. Frank*, 486 U.S. 549, 544 (1988); *Franchise Tax Bd. of California v. USPS*, 467 U.S. 512, 517-18 (1984); *Reconstruction Finance Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 84 (1941). Because the Fifth Circuit did not have the benefit of *Burr* and its progeny, it did not conduct the *Burr* analysis that led the Supreme Court to unanimously reverse the lower courts in *Thacker*. Similarly, because *Burr* had not been released, the Fifth Circuit did not recognize that by "including a sue-and-be-sued clause in its charter, Congress has cast off the [corporation's] cloak of sovereignty and given it the status of a private commercial enterprise." *Loeffler*, 486 U.S. at 556.

To the point: the Supreme Court's decisions in *Burr*, *Loeffler*, *Meyer*, and particularly *Thacker* have undermined *Sevin* to the point of abrogating any binding effect that *Sevin* might have on TVA. Without conducting any analysis of whether the IWC was acting in a commercial or governmental role as required by *Burr*, the Fifth Circuit treated the IWC like a government entity rather than a private commercial enterprise and thus vested the IWC with privileges and immunities that a commercial business would not enjoy. *Sevin* would be reversed and remanded for further proceedings if released today. And citing *Sevin* to hold that the TVA is cloaked in the protections afforded government entities under the SAA would steer this case into a head-on collision with Supreme Court dictates. Here are two obvious ones.

1. *Discretionary function exception*: In *Thacker*, the Supreme Court unanimously reversed the Circuit Court for grafting the FTCA's discretionary function exception on to the TVA's sue-and-be-sued clause. Guess what exception our Circuit applies to claims brought under the SAA? That's right, the Eleventh Circuit is among "the majority [of circuits] holding that the SAA's waiver of immunity is subject to the discretionary function exception."

*Mid-S. Holding Co. v. United States*, 225 F.3d 1201, 1204 (11th Cir. 2000); *see also* 2 Schoenbaum, Admiralty & Maritime Law, § 20:1, n.75 (collecting cases). The court is confident that if it holds this case falls under the SAA, TVA will ask the court to apply the discretionary function exception—despite the Supreme Court reversing the lower courts for doing so in *Thacker*— because that's exactly what TVA asked this court to do on remand in *Thacker. See Thacker*, ALND Case No. 5:15-cv-1232 (doc. 109, p. 10).

2. *The Liability Floor*: The Supreme Court has made clear that "[w]hen we determined [in *Burr*] that the particular suit or incident of suit fell within the sue-and-be-sued waiver, we looked to the liability of a private enterprise as a *floor* below which the agency's liability could not fall." *Meyer*, 510 U.S. at 482. The Court cited this "floor" language in *Thacker* when stating that, when TVA acts like a commercial business, TVA cannot "escape the liability a private enterprise would face in similar circumstances." *Thacker*, 587 U.S. at 227. Binding circuit precedent dictates that a private enterprise would face supplemental state law punitive damages if it was in TVA's shoes. *See In re Amtrak*, *supra*. Holding that TVA is subject to the SAA, and that the SAA does not waive sovereign immunity from punitive damages, would allow TVA to slide under the liability floor faced by a private enterprise facing the same claim—in direct contradiction to the Supreme Court's statements in *Burr*, *Meyer*, and *Thacker*.

—

On top of these known problems, applying the SAA will surely generate questions the courts have yet to face. For example, who pays? TVA is self-sufficient, and the parties say TVA must pay any judgment or settlement it owes Plaintiffs. But the SAA requires that "[t]he proper accounting officer of the United States **shall pay** a final judgment, arbitration award, or settlement on presentation of an authenticated copy" and that payment "**shall** be made from an appropriation or fund available specifically for the purpose." 46 U.S.C. § 30913(a), -(b) (emphasis added). If no such fund exists, then the Treasury must pay out of unappropriated funds. 46 U.S.C. § 30913(b). Read plainly, the SAA requires the taxpayers—not TVA—pay for TVA's negligent maritime-related acts. That's a substantial financial benefit that private power companies would not receive under the same

20

Add. 20

circumstance. It also flies in the face of Congress' intent for TVA's sue-and-be-sued clause: "When the TVA or similar body operates in the marketplace as private companies do, it is as liable as they are for choices *and judgments*." *Thacker*, 587 U.S. at 227-28 (emphasis added).

Rather than run head-on into these and other issues, the court holds that Plaintiffs "may proceed as they would against a private company" because, as pleaded, TVA was acting like a private company. *Thacker*, 587 U.S. at 227. That means none of the privileges or waiver exceptions given to governmental entities by the SAA applies to TVA here, and the court refuses to graft any of them onto TVA' sue-and-be-sued waiver.

## IV.

### MOTION TO DISMISS & MOTION TO STRIKE

With that, the court turns to TVA's requests: (1) dismiss Count 1, which pleads a negligence claim under Alabama law, (2) dismiss Count 2, which pleads a wantonness claim under Alabama law; and, (3) dismiss or strike Plaintiffs' request for supplemental state-law punitive damages under Alabama's wrongful death statutes, Ala. Code §§ 6-5-390, 6-5-410.

Each request stems from the rule that general maritime law preempts state law that materially alters or conflicts with the uniformity created by maritime law, but allows state law that supplements or fills gaps in maritime law. *See* Schoenbaum, *Admiralty and Maritime Law*, §§ 4:4, 4:5. Below, the court applies this rule to Counts 1-2 and the wrongful death Plaintiffs' prayer for supplemental state-law punitive damages. To make it easier, the court separates TVA's requests by Plaintiff type: Part A for those who survived the Dock B fire and seek remedies for personal injury and property damage, and Part B for the representatives of those who did not survive the fire.

**A.    The court dismisses Counts 1 and 2 for the surviving Plaintiffs.**

In Count 1, Plaintiffs plead that TVA's negligence under state law caused the surviving Plaintiffs' physical injury and property damage. 6AC, ¶ 72-73. In Count 2, they plead that TVA's wantonness under state law caused the same damages. *Id.* ¶ 83, 89. In Counts 4 and 5, Plaintiffs plead that the same negligent and wanton acts caused the same damage, only this time they

plead it under general maritime law and they invoke Rule 9(h) of the Federal Rules of Civil Procedure. And in their prayer for relief, the surviving Plaintiffs list eight categories of damages, without pleading whether the remedy is provided by maritime law, state law, or both. 6AC, ¶ 129. Nor do the surviving Plaintiffs plead that any of their requested remedies supplement the remedies provided by maritime law.

As pleaded, the surviving Plaintiffs seek the same remedies under the same legal theories in Counts 1-2 as they do in Counts 4-5; the court simply needs to choose which law governs, general maritime or state. As explained in Section II, the court sits in admiralty so general maritime law governs where it exists. While the court agrees with Plaintiffs that state law *can* provide supplemental remedies, *see, e.g.*, *Yamaha Motors Corp.*, 516 U.S. at 207, 214-16, the surviving Plaintiffs do not identify in their complaint what supplemental remedies they seek, or what gap in maritime law their state law claims fill. Nor do they provide this information in their response to TVA's present or previous motion. *See* (Docs. 127, 221).

The court thus dismisses Counts 1 and 2 for the surviving Plaintiffs. But the court does so without prejudice in case the surviving Plaintiffs can point to a supplemental state law remedy that they pleaded in the operative complaint; they can establish that no federal maritime rule governs; or, they can show that state interests predominate. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC,* 601 U.S. 65, 70-71 (2024); Schoenbaum, *Admiralty & Maritime Law* §§ 4:4; 4:5

## B. The court dismisses Counts 1 and 2 for the wrongful death Plaintiffs but allows them to seek supplemental state law punitive damages.

The same background applies to the wrongful death Plaintiffs, except the wrongful death Plaintiffs expressly plead that state-law punitive damages supplement general maritime remedies: "Alabama state law wrongful death supplemental remedies under Ala. Code § 6-5-410 and/or Ala. Code § 6-5-390 for punitive damages allowed under *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996)." 6AC, ¶128(a)(9).

As explained, Eleventh Circuit precedent allows the wrongful death Plaintiffs to seek supplemental punitive damages under Alabama's wrongful death statute, as long as the court applies the general maritime law's standard for wanton conduct and apportionment of liability:

> Accordingly, as the federal maritime interests present in this action outweigh Alabama's interests in having its wrongful death statute apply in its entirety, we hold that the district court erred in applying the Alabama wrongful death statute to the wrongful death claims in this action insofar as such Alabama statute provides for the recovery of punitive damages for simple negligence only and prohibits apportionment of fault and damages among joint tortfeasors.
>
> In the case of *American Dredging Co. v. Lambert*, 81 F.3d 127, 130 (11th Cir. 1996), this Court held that *Yamaha, supra,* extended the right of recovery in wrongful death cases to the nonpecuniary remedies afforded by the Florida Wrongful Death Act to actions for wrongful death to non-seamen occurring in state territorial waters. The plaintiffs in the wrongful death actions have available to them the remedies provided in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In addition, although such plaintiffs cannot recover punitive damages for simple negligence, they may recover punitive damages upon a showing of 'intentional or wanton and reckless conduct" on the part of defendants amounting to "a conscious disregard of the rights of others.' *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 699 (1st Cir. 1995). This is because the standard of liability necessary for the recovery of punitive damages is governed by admiralty law. Alabama law provides only the remedy which under *Yamaha* is now available to these wrongful death claimants in admiralty.

*In re Amtrak*, 121 F.3d at 1427 (highlights added). As shown in the yellow highlight ("in its entirety"), some application of Alabama's wrongful death statute *is* allowed, so the court cannot dismiss the wrongful death Plaintiffs' state-law claims in their entirety. As shown in the blue highlighting, the role

of Alabama's wrongful death statute is limited to providing the supplemental remedy, not the legal standard.

Following the Circuit's wording as best it can, this court will allow the wrongful death Plaintiffs to proceed with Count 2 (state-law wantonness), only to the extent that Alabama law provides a supplemental remedy for TVA's wanton conduct. When determining whether Plaintiffs are entitled to supplemental relief under Count 2, the court will apply the general maritime standard for punitive damages: Plaintiffs must prove that TVA engaged in "intentional or wanton and reckless conduct" that amounted "to a conscious disregard of the rights of others." *Id.* The court will dismiss the rest of Counts 1 and 2, without prejudice for the same reasons and with the same conditions mentioned for the surviving Plaintiffs' claims under Counts 1 and 2.

## V.

## CONCLUSION

For these reasons, the court **GRANTS** TVA's motion to dismiss Counts 1 and 2 for the surviving Plaintiffs. The court dismisses these counts without prejudice. The court **GRANTS** TVA's motion to dismiss Count 1 for the wrongful death Plaintiffs. This dismissal is without prejudice. The court **DENIES** TVA's motion to dismiss Count 2 for the wrongful death Plaintiffs to the extent that Count 2 allows them to seek punitive damages, and the court **DENIES** TVA's motion to dismiss or strike the wrongful death Plaintiffs' prayer for supplemental state law punitive damages.

**Done** on January 6, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

Add. 24